DREYER MEDICAL CLINIC, S.C., Plaintiff-Appellant, v. DONACIANO CORRAL *et al.*, Defendants-Appellees.

Second District   No. 2—91—0950

Opinion filed April 17, 1992.

Lisa M. Nyuli, of Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora, for appellant.

Thomas H. Stern, of Thomas H. Stern & Associates, of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Dreyer Medical Clinic, appeals from the judgment of the circuit court of Kane County which granted the motion of defendants, Donaciano and Gloria Corral, for a directed finding against plaintiff in its action seeking payment of medical bills. On appeal, plaintiff challenges the trial court's decision as contrary to

the manifest weight of the evidence, and it attacks the trial court's findings that plaintiff did not prove an account stated, its corporate existence, or the liability of defendants pursuant to the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015(a)(1)).

On September 5, 1990, plaintiff filed a three-count complaint against defendants seeking payment for medical services allegedly rendered to defendants' son Jorge Corral. Plaintiff alleged that it was a service corporation organized under the laws of Illinois and that from October 1989 to February 1990 it performed services for Jorge at the request of defendants. Allegedly, plaintiff billed defendants $9,949.98 for these services, and defendants did not object to the amount of the bills. In count I, plaintiff asserted a cause of action based on an account stated; count II pleaded a cause of action in contract; and count III was based on the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015(a)(1)).

Defendants filed an answer to the complaint. In their answer, defendants stated that they lacked sufficient information to admit or deny the corporate existence of plaintiff. Defendants denied the remaining allegations. Defendants also filed a third-party complaint against two of their insurance companies. In the third-party complaint, defendants alleged that on October 14, 1989, their son Jorge was injured in an automobile accident. Thereafter, defendants demanded that the insurance companies pay all the medical expenses incurred by Jorge. Both companies refused to pay. Defendants requested the trial court to order the companies to "pay the medical benefits due to [plaintiff]."

Subsequently, the third-party complaint was dismissed. Defendants' affirmative defense was also stricken on plaintiff's motion. Since there was no court reporter present at the bench trial, we derive the following facts from the certified bystander's report.

Plaintiff's first witness was Diane Langston, the credit department supervisor for plaintiff. Langston was in charge of collection of past-due accounts. The first time Langston had any knowledge of defendants' file was when it was delivered to her in the credit department when the balance was past due. The balance was comprised of charges for services plus finance charges, which were assessed pursuant to the terms of the patient registration form. The form was admitted into evidence over defendants' objection.

Plaintiff also sought to introduce into evidence the bills and itemization of the charges. The court sustained defendants' objection to the evidence on the basis that it lacked a sufficient foundation. According to Langston, the ordinary procedure followed at

plaintiff's clinic is that the treating physician fills out an encounter slip upon seeing a patient, and the computer entries for billing are made from the encounter slips. Langston testified that the charges on defendants' billing were accurate to the best of her knowledge and they were usual and customary for plaintiff's clinic. Langston admitted, however, that she did not know if the charges were the normal, ordinary and customary charges made by physicians in the community for the same services. Langston also did not know if the charges were reasonable or how the computerized bills were generated or checked for accuracy.

Regarding plaintiff's corporate existence, Langston testified that she did not know whether Dreyer Medical Clinic was a partnership, a corporation or some other type of business entity. Langston had never seen the articles of incorporation or attended a corporate board meeting. However, Langston qualified this testimony by stating that she knew plaintiff was a corporation from the designation "S.C." on the letterhead (although she did not know what "S.C." meant), and because her direct superiors had informed her that plaintiff was a corporation.

Plaintiff called Gloria Corral to testify as an adverse witness. Gloria testified through an interpreter because she cannot speak, read or write in English. However, Gloria may have answered some questions in English. Gloria testified that she brought Jorge to Dreyer Medical Clinic and requested that he be treated. Gloria acknowledged that she signed the patient registration form, although she stated that someone else completed the form and she merely signed it. According to Gloria, she did not know what the form said.

Gloria admitted that she received bills from plaintiff for services rendered to Jorge and that she submitted those bills to her insurance companies. The insurers had refused to pay the bills because Gloria would not agree to sign a subrogation agreement. The medical bills "form[ed] part of the basis for damages in a personal injury lawsuit." Defendants did not object to the charges until December 1990.

The court admitted the patient registration form into evidence but noted that the form was "not an agreement to pay for medical services, rather, that it [wa]s an agreement by the plaintiff to accept monthly payments." The form lists the patient as Jorge Corral, his birth date as "12-20-73," and the responsible party as Donaciano Corral, "father." At the close of plaintiff's case, defendants moved for a directed finding. After hearing arguments the court

found: (1) plaintiff failed to prove the corporate existence of Dreyer Medical Clinic; therefore, there was no plaintiff; (2) plaintiff did not offer proof of the services rendered to Jorge; (3) plaintiff did not prove the reasonableness of the fees charged; (4) plaintiff did not prove the relationship between the defendants; (5) Gloria's signature on the patient registration form only served as an acknowledgement of the finance charge disclosures, not as a verification of the personal information contained therein; and (6) plaintiff failed to prove its *prima facie* case. The court granted defendants' motion and entered judgment against plaintiff.

Plaintiff filed a motion to reconsider the judgment, alleging that the judgment was in error because plaintiff proved an account stated; plaintiff proved its corporate existence; and the third-party complaint established the proof of services rendered and the relationship between Jorge and defendants. Plaintiff also raised issues relating to alleged evidentiary errors. In the written order denying plaintiff's post-judgment motion, the court made the following findings: (1) "Plaintiff did not properly designate the client as an Illinois corporation, and although alleged in the complaint, was not proven at trial"; (2) "Plaintiff did not lay proper foundation for the records to be admitted into evidence at the time of trial"; and (3) "no testimony was proffered by plaintiff to prove what services were rendered to defendants' son, how much the services were worth, and whether they were necessary and reasonable." Plaintiff timely appealed.

■■ The proper standard to apply when a defendant moves for judgment following the plaintiff's case in a bench trial is that established by our supreme court in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151. The *Kokinis* standard requires that the trial court first determine whether the plaintiff has made out a *prima facie* case. If so, the court must then weigh the evidence, including any favorable to the defendant, pass on the credibility of the witnesses, and draw reasonable inferences from the evidence. If that weighing process results in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, the court should grant the motion and dismiss the cause. (*Kokinis*, 81 Ill. 2d at 154-55.) We must affirm if the trial court's ruling was not against the manifest weight of the evidence. *Bruss v. Klein* (1991), 210 Ill. App. 3d 72, 78.

On appeal, plaintiff argues that defendants made judicial admissions in their third-party complaint in which they admitted that Jorge was their son and that plaintiff rendered services to Jorge.

■ A judicial admission is a deliberate, clear, and unequivocal statement by a party regarding a concrete fact within that party's peculiar knowledge where the information upon which the admission was based was uniquely within the personal knowledge of the person making it. (*First Options of Chicago, Inc. v. Stellings* (1991), 215 Ill. App. 3d 1093, 1098.) As plaintiff admits, these statements were contradicted by defendants' denials in their answer. Moreover, the alleged admissions were made as part of a third-party complaint. In such an action, the third-party defendant's liability is dependent on the liability of the third-party plaintiff to the original plaintiff. (*People v. Brockman* (1991), 143 Ill. 2d 351, 368.) A statement made as part of an alternative fact pleading, which was made in good faith, cannot be used as an admission against the pleader. (*Bargman v. Economics Laboratory, Inc.* (1989), 181 Ill. App. 3d 1023, 1032.) The third-party complaint here was an alternate form of pleading. (See *Bargman*, 181 Ill. App. 3d at 1032-33.) In either event, we conclude that the statements in the third-party complaint were not judicial admissions.

■ Plaintiff next argues that the trial court's decision was in error because plaintiff proved an account stated. Although plaintiff correctly represents the principles for an account stated, we do not agree with plaintiff's conclusion.

An account stated is an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance. (*Toth v. Mansell* (1990), 207 Ill. App. 3d 665, 671.) Whether an account stated exists is a question for the trier of fact to resolve. *McHugh v. Olsen* (1989), 189 Ill. App. 3d 508, 516.

Plaintiff has overlooked one requirement for a valid account stated:

> " 'An account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed. [Citations.] An account stated only determines the amount of the debt where a liability exists, and cannot be made to create a liability *per se* where none before existed.' " (*Sexton v. Brach* (1984), 124 Ill. App. 3d 202, 205, quoting *Pope County State Bank v. U.G.I. Contracting Co.* (1932), 265 Ill. App. 420, 423-24.)

In other words, an account stated is merely a form of proving damages for the breach of a promise to pay on a contract. Here the trial court found that plaintiff failed to prove any liability of

defendants, and, consequently, plaintiff could not establish an account stated.

■ Plaintiff further argues that it proved the defendants were liable pursuant to the family expense act (Ill. Rev. Stat. 1989, ch. 40, par. 1015(a)(1)). Defendants respond that none of plaintiff's arguments address the essential problems identified by the trial court: that there was no evidence "to prove what services were rendered to defendants' son, how much the services were worth, and whether they were necessary and reasonable."

Plaintiff has not raised any arguments in this regard. We find that plaintiff has waived this issue. (134 Ill. 2d R. 341(e)(7).) Even if we were to agree with plaintiff that it proved that Jorge was the minor son of defendants and that plaintiff proved its corporate existence, such findings do not negate the trial court's conclusion that plaintiff failed to present any proof of the services rendered and the value of those services.

■ Plaintiff also has not attacked the trial court's ruling which barred the admission of the medical records into evidence. Any error in this regard is also waived. (134 Ill. 2d R. 341(e)(7).) For a plaintiff to establish a *prima facie* case in contract, it must introduce evidence showing the existence of a contract between itself and the defendant, performance of the contractual conditions by the plaintiff, breach of the contract by the defendant, and the resulting damages. (*People ex rel. Hartigan v. E & E Hauling, Inc.* (1991), 218 Ill. App. 3d 28, 47.) Since there was no evidence regarding what services were rendered to Jorge, what they were worth or whether those services were reasonable or necessary, we conclude that the trial court's ruling was not against the manifest weight of the evidence.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD and McLAREN, JJ., concur.