THE COUNTY OF COOK, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—90—2526

Opinion filed May 14, 1992.

Jack O'Malley, State's Attorney, of Chicago (Joan S. Cherry, Frank J. Oles, and M. Anne Gavagan, Assistant State's Attorneys, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the County of Cook (County), filed a complaint against defendant, the City of Chicago (City), on August 30, 1985. The complaint sought almost $6 million in monetary damages resulting from the treatment of tuberculosis patients at Cook County Hospital.

Plaintiff filed an amended complaint consisting of two counts. Count I was based upon a contract implied in law. The County alleged that the City was required to provide care for tuberculosis patients

residing in the City. It argued that the basis of this requirement was the City's statutory duty under its Municipal Code. Essentially, the Code provides that the rules and regulations of the State of Illinois Department of Health must be enforced by the Chicago Board of Health.

Specifically, the allegations are that the rules require the State to treat or isolate persons with tuberculosis until they begin to respond positively to therapy. A second allegation is that the City closed a municipal sanitarium in 1975 without providing an alternative treatment plan for these patients. Cook County Hospital began providing a tuberculosis treatment plan for City residents in 1982. As some of these patients were unable to pay for their medical care, the County claims a right to be reimbursed by the City for medical care provided from June 1982 through December 1985.

Count II alleged a breach of contract implied in fact. This contract is derived from the meetings and discussions between City and County officials from 1982 through 1984. This conduct is documented in letters that were exhibits attached to the amended complaint. The letters detail the contact between officials at Cook County Hospital and officials at the Chicago Board of Health.

Motions to dismiss plaintiff's first amended complaint were filed pursuant to sections 2—615 and 2—619 (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). Defendant's section 2—615 motion was granted on the grounds that the complaint was insufficient as a matter of law. The section 2—619 motion was continued for hearing on July 30, 1990. It was denied. Nevertheless, the trial court judge determined, *sua sponte*, that the amended complaint could never state a cause of action. Therefore, the complaint was dismissed.

We affirm.

On appeal, plaintiff contends that the trial court erred in dismissing the amended complaint for failure to state a cause of action for (1) a contract implied in law; and (2) a contract implied in fact. We disagree.

On review, we ask whether, when viewed in the light most favorable to the plaintiff, the facts alleged in the complaint adequately state a cause of action. (*Zadrozny v. City Colleges* (1991), 220 Ill. App. 3d 290, 294.) In order for there to be a sufficient complaint, the following must occur:

> "[A] complaint must plead substantial allegations of fact which bring the claim within the legally recognized cause of action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—601.) For purposes of a motion to dismiss, all well-pled facts are to be taken as true.

Conclusions of law and facts which are not supported by allegations of specific facts are not considered to be well-pled facts and are not admitted by a motion to dismiss." *United States Fidelity & Guaranty Co. v. Continental Casualty Co.* (1990), 198 Ill. App. 3d 950, 956.

The County contends that it should receive monetary compensation from the City. Allegedly, the City did not fulfill its statutory obligations of providing care for tuberculosis patients. The County argues that this special duty on the part of the City comes from several sources: The statute (Ill. Rev. Stat. 1989, ch. 111½, par. 22); the Municipal Code (Chicago Municipal Code §2—112—160 (1990)), and the Administrative Code (77 Ill. Adm. Code §690.720 (1988)).

■■ The first issue on appeal is whether plaintiff's amended complaint failed to state a cause of action for a contract implied in law. A contract implied in law has been described as follows:

"A contract implied in law exists from an implication of law that arises from facts and circumstances independent of an agreement or consent of the parties. It is equitable in nature and based on the premise that no one should unjustly enrich himself at another's expense. *** '[I]n a contract implied in law the duty defines the contract.' " *Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 775, quoting *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 875, 400 N.E.2d 614.

■■ According to the County, the City's duty arises from the statute, ordinance, and Administrative Code. Further, its argument of unjust enrichment is that the City was unjustly enriched by closing its tuberculosis sanitarium in 1975 and failing to provide any alternative care for those types of patients.

The County's allegation that the City has a duty is to say that the City is financially responsible for the in-patient care and treatment provided to its residents with tuberculosis during the period between June 1982 and December 1985. The County emphasizes a small excerpt from section 2 (Ill. Rev. Stat. 1989, ch. 111½, par. 22) as requiring the City to finance the medical services needed by these patients. It is as follows:

"All local boards of health, health authorities and officers, police officers, sheriffs and all other officers and employees of the state or any locality shall enforce the rules and regulations so adopted." Ill. Rev. Stat. 1989, ch. 111½, par. 22.

There is no question that the City must follow statutory laws pertaining to public health. However, there is statutory language making

it clear that this provision is only applicable to protect the public by the containment of highly contagious diseases, especially those reaching epidemic levels. The relevant portion of section 2 of the statute is as follows:

"The Department of Public Health shall investigate the causes of dangerously contagious or infectious diseases, especially when existing in epidemic form, and take means to restrict and suppress the same, and whenever such disease becomes, or threatens to become epidemic, in any locality and the local board of health or local authorities neglect or refuse to enforce efficient measures for its restriction or suppression or to act with sufficient promptness or efficiency, or whenever the local board of health or local authorities neglect or refuse to promptly enforce efficient measures for the restriction or suppression of dangerously contagious or infectious diseases, the Department of Public Health may enforce such measures as it deems necessary to protect the public health, and all necessary expenses so incurred shall be paid by the locality for which services are rendered." (Ill. Rev. Stat. 1989, ch. 111½, par. 22.)

Unambiguous statutory language should be interpreted as written. (*Lane v. Titchenel* (1990), 204 Ill. App. 3d 1049, 1053.) Here, the County's interpretation of the statute is too broad.

In considering the claim of unjust enrichment, there is nothing obligating the City to maintain or even to establish a tuberculosis sanitarium. (See Ill. Rev. Stat. 1989, ch. 34, par. 5—23001; Ill. Rev. Stat. 1989, ch. 24, par. 11—29—1.) Therefore, the City's decision to close its municipal sanitarium in 1975 was entirely at its discretion, leaving it with absolutely no duty to the County. However, Cook County Hospital has an independent duty of care to all of its patients. *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 738, citing *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326.

Generally, the regulations cited by the County establish a framework in which to provide care for tuberculosis patients. The regulations in no way indicate that the City is financially responsible for this care. For example, the relevant section of the Administrative Code is limited to how tuberculosis cases should be reported and controlled. (77 Ill. Adm. Code §690.720, (1988).) There are no references as to who should bear the financial responsibility of medical treatment. The City of Chicago is a part of the County of Cook. By sending those infected with tuberculosis to Cook County Hospital, a hospital supported by the taxes of Chicago residents, the City is abiding by the regulations at issue. Any benefit the City receives as a result of Cook

County Hospital abiding by its duty of care is incidental. *Griffith Wrecking Co. v. Greminger* (1978), 65 Ill. App. 3d 962, 964, quoting the Restatement of Restitution §106 (1937).

■ The second issue on appeal is whether plaintiff's amended complaint fails to state a cause of action for a contract implied in fact. "Contracts implied in fact arise from a promissory expression which may be inferred from the facts and circumstances showing an intent to be bound." (*People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 851.) The County points to numerous letters and discussions that took place which allegedly put the City on notice that the County was providing care for tuberculosis patients and expecting to be reimbursed. Yet, in examining the exhibits attached to the complaint, there is no specific language in the letters establishing a promissory intent.

Exhibit G is a letter from Dr. Bernard Turncock, who was, at that time, the acting commissioner of the Department of Health, to Mr. Elliott Roberts, who was the director of Cook County Hospital. The County focuses on an excerpt from the end of the letter which shows that City officials agreed to meet with County officials. It reads as follows:

> "It might be desirable, however, to arrange a meeting between top level management in each of our agencies to discuss further the issues relating to legal and financial responsibility for certain tuberculosis patients, namely those that we cause to be hospitalized at Cook County Hospital."

Yet, the County's assumption that the City would be financially responsible for all tuberculosis patients receiving care at Cook County Hospital was dealt with directly in an earlier portion of the letter. The relevant excerpt is as follows:

> "The Chicago Department of Health has never been responsible for costs incurred in providing medical services to tuberculosis patients at Cook County Hospital or any other institution within the city, except under very unusual circumstances. The recent submissions from Cook County Hospital request payment for Medicaid patients, individuals with commercial insurance coverage, as well as patients with no third party insurance coverage. Apparently, your institution assumes that the City of Chicago, and specifically the Chicago Department of Health, is responsible for costs incurred by any and all tuberculosis patients treated within the City of Chicago for whom no other source of payment can be realized. We have consistently dis-

puted this contention, and therefore are unable to accept, process, and reimburse for the claims submitted to date."

Exhibit I is a letter from Dr. Lonnie Edwards, then commissioner of the Department of Health, to Mr. Terrence Hansen, who was the acting director of Cook County Hospital. This letter also makes reference to the function of the statutory provision at issue as one of restricting and suppressing "dangerously contagious or infectious diseases." The relevant portion of exhibit I is as follows:

"I am somewhat surprised to learn that Cook County Hospital is seeking reimbursement for such a large number of tuberculosis patients, a substantial number of which do not appear to have been hospitalized as a result of Department of Health disease control efforts."

Though City officials have shown a willingness to meet with officials of the County, none of the letters indicate an intention by the City to be held financially responsible for the treatment and care of tuberculosis patients at Cook County Hospital.

■ Given the evidence presented, the trial court found that plaintiff's amended complaint failed to state a cause of action for a contract implied in law or a contract implied in fact. Therefore a motion to dismiss was granted in favor of defendant. On review of the evidence in a light most favorable to plaintiff (*Zadrozny v. City Colleges* (1991), 220 Ill. App. 3d 290, 294), we do not find the facts alleged in the complaint sufficient to state a cause of action.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.